# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WAYNE R. ANDERSEN | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1520 | **DATE** | April 11, 2002 |
| **CASE TITLE** | Derrick Williams, #N-62143 vs. Officer M.J. Nealis, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] *Enter MEMORANDUM, OPINION and ORDER:* For the reasons set forth in the accompanying Memorandum Opinion and Order, the plaintiff's motion for summary judgment [#55] is denied and the defendants' motion for summary judgment [#50] is granted. The clerk is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to Fed. R. Civ. P. 56. The case is terminated. The parties are to bear their own costs.

(11) ■ **[See Attached Memorandum Opinion and Order.]**

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | APR 1 8 2002 | |
| ✓ | Docketing to mail notices. | | date docketed | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | 65 |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| mjm | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

APR 1 8 2002

| | | |
|---|---|---|
| DERRICK WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Wayne R. Andersen |
| | ) | |
| v. | ) | 01 CV 1520     APR 1 8 ... |
| | ) | |
| DETECTIVE PAUL JACKSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, three Chicago police officers, violated the plaintiff's constitutional rights by acting with deliberate indifference to his serious medical needs. More specifically, the plaintiff alleges that when the defendants arrested him, they denied him access to medical care for multiple stab wounds.[1] This matter is before the court for consideration of the parties' cross-motions for summary judgment. For the reasons stated in this order, summary judgment will be granted in favor of the defendants and against the plaintiff.

---

[1] By Minute Order of March 21, 2000, the court on its own motion dismissed the plaintiff's claims of false arrest, conspiracy and malicious prosecution pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). *See* Minute Order of March 21, 2000. The plaintiff subsequently filed an amended complaint limited to his medical claim.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Prime Northgate Plaza Ltd. Partnership v. Lifecare Acquisitions Corp.*, 985 F. Supp. 815, 817 (N.D. Ill. 1997). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Walker v. Northeast Regional Commuter Railroad Corp.*, 225 F.3d 895, 897 (7th Cir. 2000).

However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 393 (7th Cir. 1997), *cert. denied*, 523 U.S. 1118 (1998).

## FACTS

The plaintiff, Derrick Williams, is a state prisoner, currently confined at the Pinckneyville Illinois Correctional Center. (Docket #58, address change notice.) At the time of the events underlying the complaint, the plaintiff was a free citizen. (Amended

complaint, p. 6.) The defendants, Detective Paul Jackson, Sergeant Jeffrey Vana and

Michael Nealis, are all Chicago police officers. (*Id.*, p. 2.)

On August 29, 1999, the plaintiff called "911" to report a home invasion and

assault. (*Id.*, p. 6.) In response to the call, the defendants Nealis and Vana arrived on the

scene. (Amended complaint, p. 6.) However, the officers refused to allow the plaintiff to

file charges against his purported assailant. (*Id.*) Instead, the officers arrested the

plaintiff. (*Id.*) The court gathers that criminal proceedings were brought against the

plaintiff in connection with the incident. The Illinois Department of Corrections website

indicates that the plaintiff was convicted of aggravated battery in a public place.

## The Evidence

The plaintiff testified at a hearing on June 27, 2000, that a man (Timothy Jackson)

had entered the plaintiff's home, grabbed a knife, run toward the plaintiff, and cut him on

the hand. (Defendants' Exhibit A, transcript of proceedings in *People v. Williams*, 99 CR

21093, June 27, 2000, at p. 15.) The plaintiff told police that he snatched the knife from

the man, grabbed a hammer, and then chased the man out of the house. (*Id.*)

At a hearing on June 28, 2000, the plaintiff testified that he had received cuts to his

chest, right hand, and arm. (Defendants' Exhibit B, transcript of proceedings in *People v.*

*Williams*, 99 CR 21093, June 28, 2000, at pp. E30-E31.) The plaintiff additionally

testified that he spoke only to Detective Jackson and the State's Attorney about any

injuries. (*Id.*, p. E32.)

Timothy Jackson testified that the plaintiff had stabbed **him** and that Jackson never struck or stabbed the plaintiff. (Defendants' Exhibit A, transcript of proceedings in *People v. Williams*, 99 CR 21093, June 27, 2000, at p. 68.)

The defendant Nealis, one of the arresting officers, denies that he saw any stab wounds on the plaintiff, or any other type of injury. (Defendants' Exhibit F, Affidavit of Michael Nealis, ¶ ¶ 6, 7.) Although Nealis spoke to the plaintiff to elicit information for the arrest report, the plaintiff reported no injuries. (*Id.*, ¶ ¶ 4, 8.)

Nealis' arrest report did not mention that the plaintiff was injured, or that he had claimed any injury. (Plaintiff's Exhibit 5, Arrest Report.) According to the report,

> The offender was advised of his rights, and he was transported to the 9th dist. and charged accordingly. The victim was transported to Cook County Hosp. by CFD #1, where he was reported to be in serious condition in the Trauma Unit. After being advised of his rights, the offender related he began arguing with the victim and he took a knife from the victim and the victim was stabbed. . . . (*Id.*)

The defendant Vana did not participate in the plaintiff's arrest, was not involved in booking him following his arrest, and had no contact with the plaintiff on August 29, 1999. (Defendants' Exhibit H, ¶ ¶ ¶ 3, 4, 5.) To Vana's knowledge, he has never met the plaintiff. (*Id.*, ¶ 6.) Vana only reviewed, approved and signed the arrest report prepared by other officers. (*Id.*, ¶ 8.)

Kenneth Pakula is a Chicago police officer. (Defendants' Exhibit C, Affidavit of Kenneth Pakula, ¶ 1.) On August 29, Pakula was assigned to the 9th District lockup. (*Id.*,

4

¶ 2.) It was Pakula's duty on that date to process individuals in police custody who were being placed in lockup. (*Id.*)

As part of the lockup process, Pakula screens inmates for physical or psychological injuries and illnesses before placing them into a holding cell. (*Id.*, ¶ 3.) Pakula asks questions of the person in custody and also performs a visual check. (*Id.*, ¶ 4.) As part of his screening, Pakula "always" asks the arrestee whether he or she is injured or has any serious medical problems. (*Id.*, ¶ 5.) If Pakula observes or is informed that the detainee has injuries or medical needs, he will not accept him into the lockup area or place him in a holding cell. (*Id.*, ¶ 6.) Instead, he immediately requests that the person in custody be taken to a medical facility for treatment. (*Id.*)

Pakula performed the plaintiff's screening and processing on August 29, 1999. (*Id.*, ¶¶ 7, 8.) In his report, Pakula noted that he had visually checked the plaintiff and saw no obvious signs of pain or injury. (*Id.*, ¶ 13.) Pakula additionally questioned the plaintiff, who reported no injuries or medical problems whatsoever. (*Id.*, ¶¶ 15, 18.) Pakula observed no stab wounds and the plaintiff did not say that he had been stabbed. (*Id.*, ¶ 16.) The screening record prepared on that date for the plaintiff reflects no visible injuries or reported injuries on August 29, 1999. (Defendants' Exhibit D, Chicago Police Department "Receiving Screening Record for Arrestee To Be Held in Lockup.")

The defendant Paul Jackson was assigned to the plaintiff's felony case and interviewed him on August 29, 1999, the day of his arrest. (Defendants' Exhibit G,

5

Affidavit of Paul Jackson, ¶ 4.) The plaintiff was transferred from the 9th District

"lockup" to a holding cell in Area 1 so that Jackson could interview him. (*Id.*, ¶ 5.)

Following the interview, the plaintiff was transported back to the 9th District lockup. (*Id.*,

¶ 6.) Jackson did not see any stab wounds or injuries. (*Id.*, ¶ ¶ 7, 8.) Jackson insists that,

at no time during his contact with the plaintiff, did the plaintiff ever tell him that he had

been stabbed or otherwise injured. (*Id.*, ¶ ¶ 7, 9.)

The plaintiff had a medical screening at the jail's medical facility, Cermak Health

Services, on August 30, 1999. (Defendants' Exhibit E, Medical Intake Record.) The

certified medical technician who examined the plaintiff made no mention of lacerations or

stab wounds to the plaintiff's arm or chest on the intake record. (*Id.*) The report noted

such details as "Pat. sts. [illegible] to ABD 2 yrs;" "Pt sts. eye problems;" "Pt. sts.

operation due to GSW in ABD;" and that the plaintiff was taking prescription Motrin at

the time of his arrest. (*Id.*) The report also included a diagram reflecting that the plaintiff

had a scar on his abdomen, but documenting no other bruises, cuts, swelling, soreness,

amputations, bandages, casts, tattoos or birthmarks. (*Id.*)[2] The medical technician

concluded that the plaintiff's general appearance was "good." (*Id.*)

---

[2]The plaintiff makes much of a medical intake record he evidently received in
discovery. The document obviously relates to another Derrick Williams, who had the same
name but a different inmate identification number and different screening date. (Plaintiff's
Exhibit 20.) But that document is wholly immaterial. Both parties have submitted the
correct jail medical record for the plaintiff and there is no reason to question the authenticity
or veracity of the records bearing the correct name and inmate identification number.

On August 31, 1999, the plaintiff filed a grievance concerning the purported denial of medical care for eye problems and "cuts and stab wounds injury" (sic). (Plaintiff's Exhibit 17, Detainee Grievance.) The plaintiff asserted, "I need medical treatment before I get germs and a[n] infection." (*Id.*)

The plaintiff is currently under the treatment of a psychotherapist and attends group therapy. (Plaintiff's Affidavit of Psychotherapy (docket #56); Plaintiff's motion to submit mental health record as supplemental exhibit (docket #59).) The plaintiff contends that his "stressful, emotional and mental" condition is the direct result of the "misfortune of being attack[ed] in his home on August 29, 1999, and denied medical attention to his physical injuries." (*Id.*)

## DISCUSSION

Even viewing the record in the light most favorable to the plaintiff, no reasonable person could find either that the plaintiff had a serious medical need on August 29, 1999, or that the defendants acted with deliberate to the plaintiff's known medical needs. The arresting officers, the guard who conducted a basic medical screening upon the plaintiff's arrival at the jail, a detective who interviewed the plaintiff the day of his arrest, and the jail's medical department all indicate that the plaintiff had no discernible or reported injuries on the date in question. The plaintiff's evidence, consisting entirely of a self-styled diagram, contradictory sworn testimony, unsupported statements in his brief, and a grievance two days after his arrest, are insufficient to create a triable issue of fact. The

plaintiff has failed to meet his burden under Fed. R. Civ. P. 56 for the case to survive summary judgment.

The court recognizes that, in ruling on a motion for summary judgment, the court cannot weigh the affidavits or the credibility of the parties. *Castillo v. United States*, 34 F.3d 443, 445 (7th Cir. 1994). Nevertheless, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted). The inquiry is essentially "whether the evidence presents a sufficient disagreement to require submission to the jury, or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In this case, the evidence almost entirely refutes the plaintiff's allegations.

## No Serious Medical Need

It is well established that the Due Process Clause prohibits deliberate indifference to the serious medical needs of a pretrial detainee. *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999); *Salazar v. City of Chicago*, 940 F.2d 233, 237-38 (7th Cir. 1991). Police officers may not unreasonably deny or delay needed medical treatment for a person in their custody. *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991). But inattention only to "serious" injury or signs of serious injury amounts to a constitutional violation. *Brownell v. Figel*, 950 F.2d 1285, 1289-92 (7th Cir. 1991). A plaintiff who complains that a "delay

in medical treatment rose to a constitutional violation must place **verifying medical evidence** in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) (emphasis in original), *quoting Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995).

In the case at bar, the plaintiff has failed to adduce any competent evidence that he was stabbed at all, let alone that he had a medical need serious enough to rise to the level of constitutional concern. The arresting officer observed no stab wounds or injuries. The lockup officer who conducted a basic medical screening observed no stab wounds or injuries. The medical staffer who performed a physical examination observed no injuries or stab wounds. Cermak's intake record even included a diagram reflecting that the plaintiff had a scar on his abdomen but documenting no other bruises, cuts, swelling, soreness, amputations, bandages, casts, tattoos or birthmarks. (*Id.*) The certified medical technician's conclusion was that the plaintiff's overall, general appearance was "good."

The plaintiff's quibbles with the defendants' evidence are spurious. The plaintiff first denies that he had any contact with Pakula when he was placed in a holding cell following his arrest. But unsupported statements in a brief are not evidence and cannot be given any weight. *See, e.g., In the Matter of Morris Paint and Varnish Co.*, 773 F.2d 130, 134 (7th Cir. 1985); *Higgins v. State*, No. 95 C 4464, 1997 WL 610395, *2 (N.D. Ill. Sep. 9, 1997) (Gottschall, J.), *aff'd sub nom Higgins v. Mississippi*, 217 F.3d 951 (7th Cir. 2000) (plaintiff's assertion that facts were "disputed," in the absence of evidence to

support such assertions, carried no weight). The court has twice provided the plaintiff with instructions concerning summary judgment requirements. *See* Minute Orders of February 13, 2001and November 15, 2001. Pakula has testified under oath that he performed the plaintiff's initial medical screening, and his affidavit is buttressed by a form he prepared on the date of the plaintiff's arrest. Because the plaintiff's has failed to provide any evidence to disprove Pakula's testimony, there is no genuine dispute of fact. *Accord, see, e.g., Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1313 (7th Cir. 1995) (where plaintiff failed to properly respond to defendant's statement of uncontested facts, the facts set forth would be deemed admitted). There is no basis for discounting Pakula's affidavit.

The plaintiff additionally argues that the documentary evidence and witnesses' testimony cannot be credited because there was a "conspiracy" to protect the arresting officers. But again, the plaintiff has provided no evidence whatsoever to support such an accusation. Furthermore, the court can conceive of no reason why the lockup officer or the medical staff would have lied because there was no reason to protect the defendants. This is not a case where the arresting officers are accused of using excessive force. Pakula and the medical technician were performing their routine duties and would have had no incentive to ignore or lie about the plaintiff's injuries.

The plaintiff further argues that Pakula is not qualified as an "expert witness," but Pakula's affidavit contains no expert testimony. Pakula simply attests to the manner he

conducts an initial screening, his personal observations about the plaintiff's condition, and the questions he asked. Pakula offers no scientific, technical or medical opinion. Pakula's affidavit, which is based on personal knowledge and concerns matters about which he is competent to testify, is admissible under Fed. R. Civ. P. 56(e).

The plaintiff additionally asserts that there were two other police officers working in the lockup and that he "would have liked to seen (sic) on paper what the other unknown officer's (sic) would have said about the matter." He also requests that blood samples be taken from a back "observation cell" and tested for his DNA. But the plaintiff has had two years to conduct discovery, marshal witnesses, and gather any available evidence in support of his claims. It is purely speculative to conjecture whether other witnesses might have relevant testimony. The possibility that there may be additional evidence to substantiate the plaintiff's claims is insufficient to defeat the defendants' well-supported motion for summary judgment. The time to come forward with any such evidence was now.

In sum, not a single person who came into contact with the plaintiff on August 29 or 30, 1999, appears to have observed any stab wounds or other injuries. The plaintiff's own evidence consists of entirely of self-serving documents and exhibits he drafted himself: a grievance he filed two days later asking for treatment, a diagram he has drawn of his supposed his injuries that conflicts with the medical staff's intake record, and an affidavit that he is seeking treatment from a mental health professional for his trauma.

Although the amended complaint makes repeated reference to blood, cuts, and multiple stab wounds, the plaintiff has provided no contemporaneous or subsequent medical records to support his claim that he was injured; no photographs of either his injuries then or his scars now; and not a single witness (whether it be a medical care professional, a correctional officer or a fellow inmate) who can verify that he was injured.

Even the plaintiff's own, sworn testimony on the issue is inconsistent as to the extent of his injuries: At a hearing on June 27, 2000, the plaintiff charged that the purported victim, Jackson, had cut him on the hand. In another hearing the next day, he testified that he had received cuts to his chest, right hand, and arm. In his amended complaint, the plaintiff alleges that he was stabbed in his hand and chest.

A party may not create issues of credibility by contradicting his own earlier, sworn testimony. *See, e.g., Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1152 n. 1 (7th Cir. 1997); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th Cir. 1985); *see also Eckert v. Kemper Financial Services, Inc.*, No. 95 C 6831, 1998 WL 699656, *5 (N.D. Ill. September 30, 1998), *inter alia*. If a party is allowed to create a genuine issue of material fact by changing his prior testimony, "the very purpose of the summary judgment motion--to weed out unfounded claims, specious denials, and sham defenses--would be severely undercut." *Babrocky*, 773 F.2d at 861. Contradictory testimony will not defeat summary judgment.

In short, even drawing every reasonable inference in favor of the plaintiff, the vast weight of the evidence establishes that he had no serious medical need. In light of the ample evidence against him, the plaintiff's mere say-so, without any independent evidence whatsoever to support his claim that he had multiple stab wounds, fails to create a triable issue of fact.

The court notes that much of the plaintiff's brief and statements of fact are devoted to **Timothy Jackson's** injuries and whether the evidence against the plaintiff at trial supported his conviction. The plaintiff maintains that Jackson was the real assailant and suggests that Jackson injured himself or faked injuries so that he could escape punishment and so that the plaintiff would be charged with aggravated battery instead. But as the court previously advised the plaintiff, he cannot collaterally challenge his criminal conviction by way of a civil rights action. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). The sole inquiry in this case is whether the defendants denied the plaintiff needed medical care, not whether the plaintiff assaulted Jackson. Exculpatory facts, Jackson's criminal history, and other such matters relating to the plaintiff's criminal prosecution are entirely irrelevant. The court cannot re-examine the validity of the plaintiff's criminal conviction or re-evaluate his claim of self defense in the context of this lawsuit.

## No Objective Deliberate Indifference

Even assuming (without finding) that the plaintiff did have a serious medical need, the defendants have shown that they did not act with deliberate indifference to a known or

13

obvious need. For liability to attach, an official must have "actual knowledge of the serious medical need" and there must be either "inaction or woefully inadequate action." *Hudson v. McHugh*, 148 F.3d 859, 863 (7th Cir. 1998), *relying on Farmer v. Brennan*, 511 U.S. 825 (1994); *see also Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir.), *cert. denied*, 522 U.S. 1016 (1997). The standard for determining whether a constitutional violation occurred is objective: would a reasonable officer have had cause for concern. *Echols v. Skipper*, No. 00 C 2244, 2001 WL 931628, *5 (N.D. Ill. Aug. 17, 2001) (Zagel, J.). Only intentional or criminally reckless conduct violates the Fourteenth Amendment. *Salazar*, 940 F.2d at 238; *see also Tucker v. Randall*, 840 F. Supp. 1237, 1245 (N.D. Ill. 1993) (Marovich, J.) The condition must be one that "a lay person can easily recognize as requiring medical treatment." *Glass v. Fairman*, 992 F. Supp. 1040, 1045 (N.D. Ill. 1998) (Norgle, J.)

As noted above, each of the named defendants denies that he observed, or that the plaintiff ever complained of, stab wounds or injuries. Because the plaintiff contests the defendants' assertions, this would normally be a fact matter for a jury to decide; however, the evidence in this case is so one-sided on the matter of whether the plaintiff had an obviously serious medical need that the plaintiff has failed to establish a triable issue.

First, the court questions whether the plaintiff can even claim that he sought medical attention from Nealis or Vana. In his amended complaint, at page 6, the plaintiff states that he "Asked for <u>Medical ATTENTION</u> from Both above officer (sic) [referring

to Vana and Nealis] and Sgt. [referring to Jackson] But was DENIED." However, the allegations in the amended complaint directly conflict with the plaintiff's prior sworn testimony during his criminal proceedings, where he admitted during repeated questioning that he spoke only to Detective Jackson and the State's Attorney about wounds he had purportedly sustained. *See* Defendants' Exhibit B, transcript of proceedings in *People v. Williams*, 99 CR 21093, June 28, 2000, at pp. E31-32. Even had the plaintiff submitted a counter-affidavit or other evidence to refute the defendants' statement of uncontested facts, rather than simply declaring that he "will impeach" the defendants at some later date, he cannot testify one way at trial and then file a civil rights lawsuit contradicting his own, previous sworn testimony. *See Ilhardt, supra.*

The defendant Vana, in fact, could not possibly have had any involvement in the alleged denial of medical care because he did not participate in the plaintiff's booking or arrest and has never had any contact with the plaintiff. Vana states in his affidavit that, as a police supervisor, he merely signed off on the arresting officers' report. In his opposing brief, the plaintiff makes numerous allegations about Vana's actions on the date in question, but he has provided no affidavit or other evidence to support those claims. Moreover, the fact that the plaintiff refers to Vana, whose first name is Jeffrey, as "she" and "her" is additional demonstration that the plaintiff is mistaken about Vana's identity.

Because the plaintiff has already testified that Nealis and Vana were not made aware of his injuries, and because he has failed to submit any evidence to rebut Nealis'

15

and Vana's affidavits, as required by Fed. R. Civ. P. 56 and NDIL Local Rule 56.1, their technically uncontroverted statements will be accepted as true. The plaintiff's mere say-so in an opposing brief is not "impeaching evidence." The record fails to support an inference that the defendants Nealis and Vana were aware of a serious medical need.

Turning to Jackson, it frankly defies credibility that a seriously injured, profusely bleeding plaintiff managed to make it from the 9th District lockup to Jackson's police station and back again without anyone noticing that he needed medical attention. But the court need not make any credibility determination. Jackson has submitted an affidavit testifying both that he observed no injuries to the plaintiff and that the plaintiff never asked for medical treatment.

The record raises some confusion over whether Jackson was involved in transporting the plaintiff to and from the lockup. The plaintiff correctly points out a discrepancy between the defendants' answer to the amended complaint, in which Jackson admitted that he and another officer drove the plaintiff from the 9th District Chicago Police Station to Area One, and his sworn testimony.

The plaintiff is mistaken that Jackson's court testimony conflicts with his current affidavit. At his criminal trial, the plaintiff, and not Jackson, repeatedly made reference to Jackson transporting him from the police station at 35th and Lowe to the 9th District headquarters. But Jackson steadfastly denied that he had transported the plaintiff. The

plaintiff, who apparently represented himself at his criminal trial, conducted the following cross-examination of Jackson:

Q. Who did I--who transported me, you and who else?

A. I'm not sure who transported you.

* * *

Q. Officer, how many officers were with you when you pick[ed] me up at 35th and Lowe?

A. I didn't pick you up from 35th and Lowe.

Q. You never picked me up?

A. You were brought to Area One.

Q. Sir--

A. I didn't transport you.

Q. I have proof here that you did.

***

Q. From the time that you picked me up from 35th and Lowe, what time span from me being in custody before you went back to the scene of the crime and interviewed or seen (sic) for any allege[d] weapons that I allegedly told you--

MR. ROBERTSON: Objection. He said several times he did not pick up Mr. Williams.

THE COURT: I will sustain it.

(*See* Plaintiff's Exhibit D, Report of Proceedings on June 28, 2000, pp. E86-E95).

Thus, although the plaintiff has consistently asserted that Jackson was involved in transporting him from police station to police station, Jackson has consistently denied having done so. Jackson's admission that the plaintiff was transported from place to place is not the same as an admission that he personally transported the plaintiff. Jackson's summary judgment affidavit completely harmonizes with his court testimony.

Nevertheless, in his answer to the amended complaint, Jackson admitted that he and another officer drove the plaintiff from the 9th District police station to Area 1 and back again. *See* Defendant Officers' Answer to Plaintiff's Amended Complaint (the court granted the defendants' motion for leave to file their answer instanter on February 13, 2001, but the clerk never gave the pleading a docket number). Defense counsel has offered no explanation for this discrepancy.

However, the issue of whether Jackson transported the plaintiff from building to building is not outcome-dispositive. The court may grant summary judgment if facts are in dispute, so long as those facts are not outcome determinative. *Matter of Wildman*, 859 F.2d 553, 556 (7th Cir. 1988); *Nash v. DeTella*, No. 00 C 2784, 2001 WL 1160840, *2 n. 5 (N.D. Ill. Oct. 2, 2001) (Zagel, J.) In this case, irrespective of whether Jackson drove the plaintiff from the lockup to the interrogation, the plaintiff has failed to show that he had an obvious medical need and that Jackson was aware of that medical need.

In sum, even assuming that the plaintiff did ask the named defendants for medical attention, his statements that he had stab wounds were plainly unsupported by any

objective signs of injury. The record simply fails to raise a material question as to whether the defendants had actual knowledge of a serious medical need but refused to give the plaintiff access to medical care.

## Conclusion

The defendants have submitted ample evidence establishing that they are entitled to judgment as a matter of law. The record shows that the plaintiff had no serious medical need and that the defendants did not act with deliberate indifference. The plaintiff has failed to cite any independent evidence in support of his claims that he was seriously injured, that his injuries were objectively serious, or that he requested medical attention. The vast weight of the evidence supports the defendants' position; the court finds that no reasonable person could conclude that the defendants acted with deliberate indifference to the plaintiff's serious medical needs. Accordingly, the defendants' motion for summary judgment is granted and the plaintiff's cross-motion for summary judgment is denied.

For the foregoing reasons, the case is terminated. If the plaintiff wishes to appeal this final judgment, he must file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C); *Hyche v. Christensen*, 170 F.3d 769, 771 (7th Cir. 1999). If the plaintiff does choose to appeal, he will be liable for the $105 appellate filing fee

irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a "strike" for purposes of 28 U.S.C. § 1915(g).[3] The plaintiff is warned that if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury.

IT IS THEREFORE ORDERED that the plaintiff's untimely and unsupported motion for summary judgment [#55] is denied.

IT IS FURTHER ORDERED that the defendants' motion for summary judgment [#50] is granted. The clerk is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to Fed. R. Civ. P. 56. The case is terminated. The parties are to bear their own costs.

ENTER:

*Wayne R. Andersen/tsa*

Wayne R. Andersen
United States District Judge

Dated: *April 11, 2002*

---

[3]In fact, the court is tempted to assess a strike at the district level on the basis of 28 U.S.C. § 1915(g). The plaintiff's claims are so patently fabricated as to warrant a finding that this action is "malicious."